Mathew K. Higbee, Esq., SBN 241380
Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8336
(714) 597-6729 facsimile
Email: mhigbee@higbeeassociates.com
rcarreon@higbeeassociates.com

Attorney for Plaintiff,
JEFFERY R. WERNER,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY R. WERNER,<br><br>                                    Plaintiff,<br><br>v.<br><br>EVOLVE MEDIA, LLC;<br>CRAVEONLINE, LLC; TOTALLY<br>HER MEDIA, LLC and DOES 3-25,<br>inclusive,<br><br>                                    Defendant. | Case No. 2:18-cv-07188-VAP-SK<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date:** April 6, 2020<br><br>**Hearing Time:** 2:00 p.m.<br><br>**Courtroom:** 8A |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 6, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Virgina A. Phillips of the above-titled court, located at the United States Courthouse, 350 West First St., Los Angeles, CA, 90012, Courtroom 8A, 8th Floor, Plaintiff Jeffery R. Werner ("Plaintiff" or "Werner") will move for Summary Judgment against Defendants Evolve Media, LLC ("Defendant Evolve"), CraveOnline, LLC ("Defendant Crave"), and Defendant TotallyHer Media, LLC ("Defendant TotallyHer") pursuant to Federal Rules of Civil Procedure 56(a).

Prior to the filing of this Motion, Plaintiff's counsel met and conferred with Defendants' counsel Ricardo Chavez in accordance with Local Rule 7-3.

1    Declaration of Ryan E. Carreon ("Carreon Decl.") ¶3.

2        This Motion is based on this Notice of Motion, the attached memorandum of

3 points and authorities, the declaration of Ryan E. Carreon, Jeffery R. Werner, and

4 Brian R. Wolff in support, the Separate Statement of Undisputed Facts, Index of

5 Exhibits and Evidence, and the pleadings, files and other materials that are on file

6 with the Court or may be presented at the hearing.

7

8 DATED: March 9, 2020           Respectfully submitted,

9

10                           **/s/ Ryan E. Carreon**

                           Ryan E. Carreon, Esq.

11                           Cal. Bar No. 311668

12                           **HIGBEE & ASSOCIATES**

                          1504 Brookhollow Dr., Ste 112

13                           Santa Ana, CA 92705-5418

14                           (714) 617-8336

                          (714) 597-6559 facsimile

15                           *Counsel for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

    A.   Jeffery R. Werner Is A Professional Photographer ...............................1

    B.   The Photographs Forming The Subject Matter Of This Dispute ..........2

        1.   Giant George...............................................................................2

        2.   The Buffalo Whisperer ................................................................3

        3.   Mr. Stubbs...................................................................................3

        4.   Wiley Coyote ..............................................................................3

    C.   Defendants Own And Operate The Websites At Issue ........................4

    D.   Defendants Infringed Werner's Images ................................................5

        1.   The Crave Article Infringed Werner's Buffalo Whisperer and Wiley Coyote Images...........................................................5

        2.   The Webecoist Article Infringed Werner's Mr. Stubbs Image. ...........................................................................................5

        3.   The Dogtime Article Infringed Werner's Giant George Image. ...........................................................................................6

    E.   Defendants Ignored Repeated Cease And Desist Letters.....................6

II.   SUMMARY JUDGMENT STANDARD .........................................................8

III.   DEFENDANT'S INFRINGING CONDUCT IS NOT DISPUTED .................9

    A.   Werner Has Established *Prima Facie* Copyright Infringement...........9

        1.   The Undisputed Facts Demonstrate That Werner's Images Are Sufficiently Original To Satisfy The First Element............9

        2.   Defendants Are Directly Liable For Infringement Of The Buffalo Whisperer, Wiley Coyote And Mr. Stubbs Images. .......................................................................................11

        3.   Defendants Are Vicariously Liable For Infringement Of All Four Images. ......................................................................12

        4.   Defendants Evolve And TotallyHer Are Contributorily Liable For Infringing The Mr. Stubbs And Giant George Images. .......................................................................................14

    B.   Werner Is Entitled To Seek Statutory Damages And Attorneys' Fees. ......................................................................................................15

IV.   WERNER IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE DEFENSES...........................................16

MOTION FOR SUMMARY JUDGMENT

A.    Werner Has Sufficiently Stated A Claim. ............................................ 16

B.    Defendants' Use of the Images Was Admittedly Not Authorized. ...... 16

C.    Defendants Use of Werner's Images Was Not A Fair Use. ................ 16

        1.    The Purpose And Character Of The Use Weighs Against
              A Finding Of Fair Use. ............................................................ 17

        2.    The Nature Of The Copyrighted Work Weighs Against A
              Finding Of Fair Use. ............................................................... 18

        3.    The Amount And Substantiality Of The Portions Used
              Weighs Against A Finding Of Fair Use. ................................. 19

        4.    The Effect On The Market Place Weighs Against A
              Finding Of Fair Use. ............................................................... 20

D.    Defendants Use of Werner's Images Was Not A *De Minimis*
      Use ........................................................................................................ 20

E.    Defendants Are Not Entitled to Safe Harbor Protection. .................... 21

F.    Failure To Mitigate Damages Is Not An Affirmative Defense. ........... 23

G.    The Lack Of Volitional Act Defense Must Fail. .................................. 24

H.    Defendant's First Amendment/Free Speech Defense Must Fail ......... 24

I.    Speculative Damages Defense Is Not An Affirmative Defense ......... 25

V.    CONCLUSION ............................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) ................................................................................................ passim

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986) ................. 9

*Burnett v. Twentieth Century Fox Film Corp*, 491 F.Supp.2d 962, 971 (C.D.Cal. 2007) ....................................................................................... 20

*Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53 (1884) ............ 10

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, (1994) ............ 17

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ............................. 9

*Educational Testing Service v. Simon,* 95 F.Supp.2d 1081, 1087 (C.D.Cal.1999) ......................................................................................... 9

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) ............................................. 24

*Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) .................. 12

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ........ 9

*Fisher v. Dees,* 794 F.2d 432, 434 n. 2 (9th Cir. 1986) .......................... 21

*Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 261-64 (9th Cir. 1996) ................................................................................................ 13, 14

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2013) ................................................................................................ 11

*Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) ......................................................................................... 9

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ............................................................. 13

*Harper & Row Publishers, Inc v. Nation Enterprises*, 471 U.S. 539, 561 (1985) ............................................................................................ 17, 24

*In re Capital Cities/ABC, Inc.*, 918 F.2d 140, 143 (11th Cir. 1990) ...... 24

*Interscope Records, Motown Record Co., L.P. v. Time Warner, Inc.*, No. CV 10-1662 SVW (PJWx), 2010 U.S. Dist. LEXIS 151460, at *44-48 (C.D. Cal. June 28, 2010) ................................................................ 23

*L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1121 (9th Cir. 1997) ................................................................................................ 16, 18

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 2010 WL 5598337, at *7 (N.D. Cal. Mar. 19, 2010)…………………………………...........22

*Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998) .................................................................................................... 14

*Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc.*, 853 F.3d 1020, 1027 (9th Cir. 2017) .................................................. 21, 22, 23

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, n.9 (2005) ............................................................................................ 12

*Nat'l Photo Group, LLC v. Allvoices, Inc.*, 2014 WL 280391, at *4 (N.D. Cal. Jan. 24, 2014) ...................................................................... 21

*Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2003) ........................ 21

*On Davis v. The Gap, Inc.*, 246 F.3d 152, 158 (2d Cir. 2001) ................... 23

*Oppenheimer v. Allvoices, Inc.*, 2014 WL 2604033 (N.D. Cal. June 10, 2014) .................................................................................................. 22

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) ........ 11

*Perfect 10, Inc. v. Yandex N.V.* 2013 WL 1899851, at *8 (N.D. Cal. May 7, 2013) ......................................................................................... 21

*Pro Arts, Inc. v. Hustler Magazine, Inc.* 787 F.2d 592 (6th Cir. 1986) ........ 18

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995) ........................................................ 11

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir.1989) ......... 9

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 471 U.S. 539, 565 (1985) ........ 19

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.,* 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006) ................................................................. 9

*Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 220 (S.D.N.Y. 2000) ................................................................................. 24

*Zacchini v. Scripps-Howard*, 433 U.S. 562, 574-78, (1977) ..................... 24

**STATUTES**

17 U.S.C. § 102(a)(5) ............................................................................ 10

17 U.S.C. § 106 .................................................................................... 9

17 U.S.C. § 106(5) ............................................................................... 12

17 U.S.C. § 107 .................................................................................... 17

17 U.S.C. § 410(c) ................................................................................ 9

17 U.S.C. § 412(2) ............................................................................... 15

17 U.S.C. § 512(c)(1) ...................................................................... 21, 22

MOTION FOR SUMMARY JUDGMENT

17 U.S.C. § 512(c)(1)(A)(i) ..................................................................... 22

**TREATISES**

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01, at 13-6 *159 (1999) ..................................................... 23

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.08[C][1] (2016)................................................................. 11

MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

I.     **INTRODUCTION**

### A. Jeffery R. Werner Is A Professional Photographer

Jeffery R. Werner is a professional photographer with over 35 years experience. Separate Statement of Undisputed Facts ("SSUF") No. 1. His photographs have appeared in publications such as *Life, Time, Newsweek, People, Marie Claire, FHM, Smithsonian, Playboy, Maxim, In Touch, Daily Mail, Penthouse*, and many others. SSUF No. 2.

Werner is widely known for his specialty work in capturing video and photographs of dangerous stunts, and is the only photographer inducted into the Stuntworld Hall of Fame. SSUF No. 3.His work has been featured on such television shows as *That's Incredible!, The World's Greatest Stunts, Stuntmasters, Guinness World Record Spectaculars, Ripley's Believe It Or Not,* and *I Dare You.* SSUF No. 4. In addition to stunt work, much of Werner's time is devoted to capturing exotic animals, sideshow eccentricities, and people who have overcome incredible obstacles. SSUF No. 5.

Werner is the president of the editorial syndication agency, Incredible Features, Inc. ("Incredible Features"), which distributes and syndicates his and other photographer's works. SSUF No. 6. The uniqueness of Werner's portfolio has resulted in substantial licensing opportunities throughout the years on which he relies to research and fund future photo shoots and to pay himself and his staff at Incredible Features. SSUF No. 7.

Werner has always maintained the publishing rights to his works. SSUF No. 8. Werner relies on income generated from licensing his photographs and editorial packages to provide the revenue necessary to produce his next story and to pay the staff of Incredible Features. SSUF No. 9. Unfortunately, a multitude of unauthorized copies of Werner's works and others from Incredible Features' portfolio are now on the Internet as a result of theft. Incredible Features has now

MOTION FOR SUMMARY JUDGMENT

been forced to add additional staff to discover piracy and to help collect the revenues due from copyright infringements. The policing of its intellectual properties have become a cumbersome and expensive task, which adds to the cost of every photograph produced. SSUF No. 10.

For each photograph that he creates, he makes a number of creative decisions in order to ensure that he produces the most compelling and unique shot including the selection of the camera equipment to be used, choice of the location and time of day, the angle of the shot, determining and framing the subject and appropriate background elements, determining the precise moment in time when the shot is to be taken, employing various lighting techniques, utilizing shading, and exposure. SSUF No. 11.

**B. The Photographs Forming The Subject Matter Of This Dispute**

### *1.    Giant George*

In 2009, Werner captured a series of photographs of "Giant George," a four-year-old blue Great Dane who, at 43 inches tall, was considered to be the world's tallest dog. SSUF No. 12. One of the photographs Werner took was of George and his owner, Dave Nasser, sitting in the grass ("Giant George Image"). SSUF No. 13. Werner subsequently registered the Giant George Image with the United States Copyright Office under registration number VAu 1-005-177, with an effective registration date of November 11, 2009. SSUF No. 14.

After Werner's photographs were published, Giant George made a number of high profile media appearances, including an appearance on The Oprah Winfrey Show in February 2010, where the Guinness Book of World Records officially titled George "the world's tallest dog." SSUF No. 15. The story of Giant George became quite popular which afforded Werner a number of lucrative licensing opportunities for the Giant George Image. SSUF No. 16.

Giant George passed away in 2013, which generated renewed interest in the Giant George Image. SSUF No. 17.

MOTION FOR SUMMARY JUDGMENT

### 2.    *The Buffalo Whisperer*

In 2012, Werner captured a series of photographs of R.C. Bridges, nicknamed the "Buffalo Whisperer," and his wife Sherron, who share their Texas home a 2,400lbs buffalo named "Wildthing" and a 900lbs buffalo named "Bullet." SSUF No. 18. One of the photographs Werner took was of Bridges roping Wildthing, and Bullet ("Buffalo Whisperer Image"). SSUF No. 19. Werner subsequently registered the Buffalo Whisperer Image with the United States Copyright Office under registration number VA 1-915-275, with an effective registration date of May 16, 2014. SSUF No. 20. The story of the "Buffalo Whisperer" became quite popular which afforded Werner a number of lucrative licensing opportunities for the Buffalo Whisperer Image. SSUF No. 21.

### 3.    *Mr. Stubbs*

In 2013, Werner captured a series of photographs of "Mr. Stubbs," an alligator who was the first in the world to be fitted with a prosthetic tail after losing his in a fight. SSUF No. 22. One of the photographs Werner took was a full body shot of "Mr. Stubbs" while he was bearing his teeth ("Mr. Stubbs Image"). SSUF No. 23. Werner subsequently registered the Mr. Stubbs Image with the United States Copyright Office under registration number VA 1-861-824, with an effective registration date of March 13, 2013. SSUF No. 24. The story of "Mr. Stubbs" became quote popular, which afforded Werner a number of lucrative licensing opportunities for the Mr. Stubbs Image. SSUF No. 25.

### 4.    *Wiley Coyote*

In 2013, Werner captured a series of photographs of "Wiley," a coyote that was born in the wild but domesticated and kept as a pet by eight-year-old Hailey Hanestad. SSUF No. 26. One of the photographs Werner took was of "Wiley" and eight-year-old Hailey, sitting on Hailey's bed ("Wiley Coyote Image"). SSUF No. 27. Werner subsequently registered the Wiley Coyote Image with the United States Copyright Office under registration number VA 1-920-166, with an effective registration date of December 17, 2013. SSUF No. 28. The story of "Wiley"

MOTION FOR SUMMARY JUDGMENT

became quite popular, which afforded Werner a number of lucrative licensing opportunities for the Wiley Coyote Image. SSUF No. 29.

### C. Defendants Own And Operate The Websites At Issue

Evolve Media, LLC ("Evolve") is a California Limited Liability Company with a principle place of business at 5140 Goldleaf Circle, Los Angeles, CA, 90056. SSUF No. 30. CraveOnline Media, LLC "CraveOnline") and TotallyHer Media, LLC ("TotallyHer") are wholly owned subsidiaries of Evolve. SSUF No. 31. Evolve, CraveOnline, and TotallyHer, all have a principle place of business at 5140 Goldleaf Circle, Los Angeles, CA, 90056. SSUF No. 32.

Josh Ellingwood is the General Counsel for Evolve, CraveOnline, and TotallyHer. SSUF No. 33. Evolve, CraveOnline, and TotallyHer have all designated with the United States Copyright Office Ellingwood as their authorized agent to receive notifications for claims related to copyright infringement at their principle place of business at 5140 Goldleaf Circle, Los Angeles, CA, 90056. SSUF No. 34.

CraveOnline operates the website www.craveonline.com. SSUF No. 35. CraveOnline launched www.craveonline.com in 2004. SSUF No. 36.

TotallyHer operates the website www.momtastic.com. SSUF No. 37. Evolve launched www.momtastic.com in 2010. SSUF No. 38. www.webecoist.com is a subdomain of www.momtastic.com which is operated by Totally Her. SSUF No. 39. TotallyHer acquired www.webecoist.com in 2011. SSUF No. 40.

TotallyHer operates the website www.dogtime.com. SSUF No. 41. TotallyHer acquired www.dogtime.com in 2014. SSUF No. 42. Evolve supervises and controls the use of photographic imagery on its subsidiaries' websites through a written Image Use Policy which outlines required procedures related to submission and use of photographic images. SSUF No. 43. Failure to comply with Evolve's Image Use Policy may result in disciplinary action or termination or any employee or independent contractor. SSUF No. 44. The Image Use Policy and its addendums

are issued by Evolve and apply to images intended for use on the websites www.momtastic.com, www.webecoist.com, and www.craveonline.com. SSUF No. 45.

In some instances, Evolve permits unlicensed infringing use of photographs. For example, Evolve's March 24, 2016 Image Use Policy encourages unlicensed imagery to be used in meme or GIFs stating "[w]hile this is considered copyright infringement legally speaking, content owners might not press the issue because it may help to integrate their brands into the culture to have their works copies [sic] around the internet in very small bites." SSUF No. 46.

**D. Defendants Infringed Werner's Images**

### 1. The Crave Article Infringed Werner's Buffalo Whisperer and Wiley Coyote Images.

On June 20, 2016, Evolve posted an article on www.craveonline.com titled "10 People With Incredibly Badass Pets" ("Crave Article"). SSUF No. 47. The Crave Article was authored by K. Thor Jensen, an independent contractor. SSUF No. 48. Evolve paid K. Thor Jensen to author the Crave Article. SSUF No. 49.

As part of Evolve's policies and procedures, the author selects photographs for articles on www.craveonline.com. SSUF No. 50. As part of Evolve's policies and procedures, a Managing Editor reviews content before publication on www.craveonline.com. SSUF No. 51.

Evolve received advertising revenue in connection with the Crave Article. SSUF No. 52.

Copies of Werner's Buffalo Whisperer and Wiley Coyote Images were displayed with the Crave Article. SSUF No. 53. The Buffalo Whisperer and Wiley Coyote Images were not licensed for use in the Crave Article. SSUF No. 54.

### 2. The Webecoist Article Infringed Werner's Mr. Stubbs Image.

On March 25, 2013, Evolve posted an article on www.webecoist.momtastic.com title "Bionic Animals: 10 Creatures Thriving with Prosthetics" ("Webecosit Article"). SSUF No. 55. The Webecoist Article was

MOTION FOR SUMMARY JUDGMENT

1  authored by Stephanie A. Rogers, an independent contractor. SSUF No. 56. Evolve
2  Paid Stephanie A. Rogers to author the Webecoist Article. SSUF No. 57.

3      As part of Evolve's policies and procedures, the author selects photographs
4  for articles on www.webecoist.momtastic.com. SSUF No. 58. As part of Evolve's
5  policies and procedures, a Managing Editor reviews content before publication on
6  www.webecoist.momtastic.com. SSUF No. 59.

7      Evolve received advertising revenue in connection with the Webecoist
8  Article. SSUF No. 60.

9      A copy of Werner's Mr. Stubbs Image was displayed with the Webecoist
10  Article. SSUF No. 61. The copy of Werner's Mr. Stubbs Image displayed with the
11  Webecoist Article contained the visible watermark "© Incredible Features/Barcroft
12  M" in the bottom left corner. SSUF No. 62. The Mr. Stubbs Image was not licensed
13  for use in the Webecoist Article. SSUF No. 63.

14      ***3.    The Dogtime Article Infringed Werner's Giant George Image.***

15      In December 2013, an article appeared on www.dogtime.com titled "Best
16  dog pictures of 2013" ("Dogtime Article"). SSUF No. 64. A copy of Werner's
17  Giant George Image was displayed with the Dogtime Article. SSUF No. 65.

18      Evolve received advertising revenue in connection with the Dogtime Article.
19  SSUF No. 66. The Dogtime Article continued to generate page views and
20  advertising revenue after TotallyHer acquired Dogtime in 2014. SSUF No. 67.

21      The Giant George Image was not licensed for use in the Dogtime Article.
22  SSUF No. 68.

23  **E. Defendants Ignored Repeated Cease And Desist Letters**

24      On May 16, 2017, Brian R. Wolff of International Intellectual Property, Inc.
25  sent a letter to 5140 W. Goldleaf Circle, 3rd Floor, Los Angeles, CA 90056
26  addressed to Josh Ellingwood, the registered agent for CraveOnline. SSUF No. 69.
27  The letter stated that the display of the Buffalo Whisperer and Wiley Coyote
28  Images with the Crave Article were not authorized and contained a link to the

1  Crave Article on www.craveonline.com, proof of copyright registration for the

2  Buffalo Whisperer and Wiley Coyote Images, and screenshots of the Crave Article.

3  SSUF No. 70.

4  That same day, Wolff also sent a letter to 5140 W. Goldleaf Circle, 3rd Floor,

5  Los Angeles, CA 90056 addressed to Josh Ellingwood, the registered agent for

6  TotallyHer. SSUF No. 71. The letter stated that the display of the Mr. Stubbs and

7  Giant George Images with the Webecoist and Dogtime Articles were not authorized

8  and contained a link to the Webecoist Article on www.webecoist.momtastic.com

9  and the Dogtime Article on www.dogtime.com, proof of copyright registrations for

10 the Mr. Stubbs and Giant George Images, and screenshots of the Webecoist and

11 Dogtime Articles. SSUF No. 72.

12 According to United State Postal Service records both May 16, 2017 letters

13 were signed for and delivered on May 17, 2017 to "J ELLINGWOOD" at 5140

14 Goldleaf Circle, 3rd floor, Los Angeles, CA 90056. SSUF No. 73. On May 16, 2017

15 Ellingwood sent a letter to Whalerock Digital Media, LLC dated May 16, 2017 re:

16 Notice of Claim for Copyright Infringement (Jeffrey Werner) seeking

17 indemnification from Whalerock for the claimed infringement. SSUF No. 74.

18 After sending the May 16, 2017 letters, Wolff observed that the Buffalo

19 Whisperer and Wiley Coyote Wiley Coyote Images were removed from

20 www.craveonline.com, but that the Mr. Stubbs and Giant George Images had not

21 been removed from www.webecoist.momtastic.com and www.dogtime.com,

22 respectively. SSUF No. 75.

23 After waiting a week and verifying that the Mr. Stubbs and Giant George

24 Images had not been removed, Wolff sent a second consolidated letter to

25 Ellingwood dated May 23, 2017 stating that, as of the date of the letter, the Mr.

26 Stubbs and Giant George Images had not been removed. SSUF No. 76. According

27 to United State Postal Service records the May 23, 2017 letter was signed for and

28

MOTION FOR SUMMARY JUDGMENT

delivered on May 24, 2017 to "J ELLINGWOOD" at 5140 Goldleaf Circle, 3rd floor, Los Angeles, CA 90056. SSUF No. 77.

After waiting a week and verifying that the Mr. Stubbs and Giant George Images had not been removed, Wolff sent a third letter to Ellingwood dated May 30, 2017 stating that, as of the date of the letter, the Mr. Stubbs and Giant George Images had not been removed. SSUF No. 78. According to United State Postal Service records the May 30, 2017 letter was signed for and delivered on May 31, 2017 to "J ELLINGWOOD" at 5140 Goldleaf Circle, 3rd floor, Los Angeles, CA 90056. SSUF No. 79.

On June 13, 2017, Ellingwood sent an email to Wolff stating that he has been "out of pocket" for a couple of weeks but that he was aware of the claimed infringements and requested that the parties speak by telephone. SSUF No. 80.

On June 16, 2017, Wolff and Ellingwood spoke on the telephone to discuss the letters sent by Wolff and to discuss the continued infringing use of the Mr. Stubbs and Giant George Images. SSUF No. 81. Later on June 16, 2017, Wolff sent a follow up email to Ellingwood with links to download digital copies of all the correspondence he had previously sent. SSUF No. 82.

On August 18, 2018, Werner filed the instant lawsuit. SSUF No. 83. At the time Werner filed this lawsuit, both the Mr. Stubbs and Giant George Images were still being displayed on www.webecoist.momtastic.com and www.dogtime.com, respectively. SSUF No. 84. As of March 9, 2020, the Giant George Image is still being displayed at www.dogtime.com.  SSUF No. 85.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings and the evidence demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

1   (1986)Summary judgment is appropriate if the non-moving party fails to offer

2   "evidence on which the jury could reasonably find for the [non-moving party]."

3   *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The moving party need

4   only point to the absence of evidence proffered by the non-moving party. *Celotex*,

5   477 U.S. at 325.

6   ## III.    DEFENDANT'S INFRINGING CONDUCT IS NOT DISPUTED

7   ### A. Werner Has Established *Prima Facie* Copyright Infringement

8   To establish a prima facie case of copyright infringement, a plaintiff "must

9   demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent

10   elements of the work that are original.'" *Funky Films, Inc. v. Time Warner Entm't*

11   *Co*., 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist Pubs., Inc. v. Rural Tel.*

12   *Serv. Co*., 499 U.S. 340, 361 (1991)). "The word 'copying' is shorthand for the

13   infringing of any of the copyright owner's five exclusive rights" under 17 U.S.C. §

14   106. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.

15   2001) (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th

16   Cir.1989)). These exclusive rights include the right to reproduce, distribute,

17   publicly display, perform, or create derivative works of the copyrighted

18   work. *See* 17 U.S.C. § 106.

19   A plaintiff need not demonstrate the defendant's intent to infringe the

20   copyright in order to demonstrate copyright infringement. *UMG Recordings, Inc. v.*

21   *Disco Azteca Distributors, Inc.,* 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006); *see*

22   *also Educational Testing Service v. Simon,* 95 F.Supp.2d 1081, 1087

23   (C.D.Cal.1999) (copyright infringement "is a strict liability tort").

24   #### 1.    *The Undisputed Facts Demonstrate That Werner's Images Are Sufficiently Original To Satisfy The First Element.*

25   A certificate of registration validly obtained from the Copyright Office

26   within five years of first publication of a work constitutes *prima facie* evidence of

27   the originality of the work and of the facts stated therein, including ownership. *See*

28   17 U.S.C. § 410(c).   In this case, Werner is entitled to this statutory presumption

MOTION FOR SUMMARY JUDGMENT

because he registered all four of his Images with the Copyright Office within five years of publication.

It is undisputed that Werner has always maintained the publishing rights to his works. SSUF No. 8. It is undisputed that Werner created the Giant George Image in 2009 and registered it with an effective registration date of November 11, 2009. *See* SSUF Nos. 12-14. It is undisputed that Werner created the Buffalo Whisperer Image in 2012 and subsequently registered it with an effective registration date of May 16, 2014. *See* SSUF Nos. 18-20. It is undisputed that Werner created the Mr. Stubbs Image in 2013 and registered it with with an effective registration date of March 13, 2013. SSUF No. 22-24. Finally, it is undisputed that Werner created the Wiley Coyote Image in 2013 and registered it with an effective registration date of December 17, 2013. SSUF No. 26-28.

Even if Werner was not afforded the statutory presumption of originality his Images easily make the grade. Photographs are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright. *See* 17 U.S.C. § 102(a)(5) (extending copyright protection to "pictorial, graphic, and sculptural works"). In the seminal case protecting photos, the Supreme Court held that a photographic portrait of Oscar Wilde was entitled to copyright protection because of various creative elements employed by the photographer. *Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53 (1884).

Here, it is not disputed that Werner's photographs are unique and that for each Image he creates, he makes a number of creative decisions in order to ensure that he produces the most compelling and unique shot including the selection of the camera equipment to be used, choice of the location and time of day, the angle of the shot, determining and framing the subject and appropriate background elements, determining the precise moment in time when the shot is to be taken, employing various lighting techniques, utilizing shading, and exposure. SSUF No. 11. These creative decisions are sufficient to meet the relatively low bar or originality

MOTION FOR SUMMARY JUDGMENT

required for copyright protection. *See Feist Publ'ns, Inc.* 499 U.S. at 345 ("To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.")

Therefore, Werner should be granted summary judgment as to the first element of copyright infringement.

### 2. Defendants Are Directly Liable For Infringement Of The Buffalo Whisperer, Wiley Coyote And Mr. Stubbs Images.

To establish a prima facie case of direct infringement, a plaintiff "must show ownership of the allegedly infringed material" and "demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records,* 239 F.3d at 1013. In addition, direct infringement requires the plaintiff to show causation (also referred to as "volitional conduct") by the defendant. *See Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2013).

The word "volition" in this context does not really mean an "act of willing or choosing" or an "act of deciding," rather, it "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (quoting *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995)); *see also* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.08[C][1] (2016).

It is undisputed that Defendants CraveOnline and TotallyHer are wholly owned subsidiary of Defendant Evolve. SSUF No. 31. It is undisputed that www.craveonline.com is operated by Defendant CraveOnline (SSUF No. 35) while www.webecoist.momtastsic.com is operated by Defendant TotallyHer (SSUF Nos. 37, 39). It is undisputed that Werner's Buffalo Whisperer and Wiley Coyote Images were displayed with the Crave Article without a license (SSUF Nos. 53-54) and that Werner's Mr. Stubb's Image was displayed with the Webecoist Article without a license (SSUF Nos. 61, 63). It is further undisputed that, as part of Defendant

MOTION FOR SUMMARY JUDGMENT

Evolve's policies and procedures, a Managing Editor reviews all content prior to publication. SSUF Nos. 51 and 59. Finally it is undisputed that Defendant Evolve directly posted the Crave and Webecoist Articles on www.craveonline.com and www.webecoist.momtastic.com. SSUF Nos. 47, 55.

Therefore, Defendant Evolve, acting through its wholly owned subsidiaries CraveOnline and TotallyHer, engaged in volitional conduct by directly posting the Crave and Webecoist Articles on the Internet, thereby causing Werner's Buffalo Whisperer, Wiley Coyote, and Mr. Stubbs Images to be publically displayed on www.craveonline.com and www.webecoist.momtastic.com without a license. These unauthorized acts violated Werner's right to publically display Buffalo Whisperer, Wiley Coyote, and Mr. Stubbs Images. *See* 17. U.S.C. § 106(5). Without Defendant Evolve's affirmative act of posting the Crave and Webecoist Articles on its websites through its subsidiaries, no infringement would have occurred.

Thus, Defendants Evolve, CraveOnline, and TotallyHer directly infringement Werner's Buffalo Whisperer, Wiley Coyote, and Mr. Stubbs Images, and summary judgment should be granted in Werner's favor.

### 3. *Defendants Are Vicariously Liable For Infringement Of All Four Images.*

Vicarious liability "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, n.9 (2005); *see also Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from *another's* infringing activity and 'has the right and ability to supervise' the infringing activity") (emphasis in original) (quoting *A&M Records, Inc.* 239 F.3d at 1013.

When assessing vicarious liability, it does not matter whether the underlying

MOTION FOR SUMMARY JUDGMENT

direct infringer is an employee or an independent contractor. *See Gershwin Publishing Corp. v. Columbia Artists Management, Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971). (A "proprietor [is] liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhances income. *He is liable whether the band is considered, as a technical matter, an employee, or an independent contractor.*" [emphasis added]); *see also Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259*,* 261-64 (9th Cir. 1996) (following *Shapiro* and referring to it as the "landmark case" on vicarious liability for copyright infringement).

As to the first prong of establishing vicarious liability, the ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise. *A&M Records, Inc.* 239 F.3d at 1023; *see Fonovisa*, 76 F.3d at 262 ("Cherry Auction had the right to terminate vendors for any reason whatsoever and through that right had the ability to control the activities of vendors on the premises.") Defendant Evolve supervises and controls the use of photographic imagery on its subsidiaries' websites through a written Image Use Policy which outlines the required procedures related to submission and use of photographic images. SSUF No. 43. Failure to comply with Evolve's Image Use Policy may result in disciplinary action or termination or any employee or independent contractor. SSUF No. 44. In addition, as part of Evolve's policies and procedures, a Managing Editor reviews content prior to publication on its subsidiaries' websites, this giving Evolve and its subsidiaries the ability to "block" any content from appearing on any of its websites. *See* SSUF Nos. 51, 59.

Therefore, Defendant Evolve, acting through its subsidiaries Defendant CraveOnline and Defendant TotallyHer has the right and ability to supervise and control the photographic imagery that appears on its websites and the first prong of vicarious liability is established.

The second prong considers whether a defendant has a financial interest in

MOTION FOR SUMMARY JUDGMENT

the infringing activity. Financial benefit exists where the availability of infringing material "acts as a 'draw' for customers." *Fonovisa*, 76 F.3d at 263-64 (stating that financial benefit may be shown "where infringing performances enhance the attractiveness of a venue"). Here the second prong of vicarious liability is satisfied because Defendant Evolve acting through its subsidiaries Defendant CraveOnline and Defendant TotallyHer, receives a financial benefit in the form of actual and anticipated advertising revenues. It is undisputed that Defendants received advertising revenue from the Crave, Webecoist, and Dogtime articles that featured infringing copies of Werner's Images. SSUF Nos. 52, 60, 66-67.

Thus, Werner has established that Defendants are vicariously liable for the infringements at issue, and summary judgment should be entered in his favor.

### 4. Defendants Evolve And TotallyHer Are Contributorily Liable For Infringing The Mr. Stubbs And Giant George Images.

"One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Fonovisa,* 76 F.3d at 264 (citation omitted). A plaintiff must show that a defendant had knowledge of or had reason to know about direct infringement by a third party and that it substantially contributed to the infringing activities. *A&M Records, Inc.,* 239 F.3d at 1013 n.2, 1019. Put differently, liability exists if the defendant engages in "personal conduct that encourages or assists the infringement." *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998).

Here, Defendant Evolve and its subsidiary Defendant TotallyHer are contributorily liable for failing to remove the Mr. Stubbs and Giant George Images after learning of the infringements. It is undisputed that www.webecosit.momtastic.com and www.dogtime.com are properties of Defendant Evolve's subsidiary TotallyHer. SSUF Nos. 37-42. It is also undisputed that in 2017, Wolff sent repeated noticed to Defendant Evolve and TotallyHer's general counsel, Josh Ellingwood, specifically alerting him to the infringing use of the Mr.

MOTION FOR SUMMARY JUDGMENT

1    Stubbs and Giant George Images as displayed with the Webecoist and Dogtime
2    Articles. *See* SSUF Nos. 69-82. It is further undisputed that at the time Werner filed
3    his lawsuit in August 2018, both Images were still being displayed. SSUF Nos. 83-
4    84. Indeed, as of the date of this Motion, the Giant George Image is still accessible
5    on www.dogtime.com. SSUF No. 85.

6         Defendants' failure to remove the Mr. Stubbs and Giant George Images after
7    receiving specific notice of Werner's allegations of infringement renders them
8    liable. Indeed, the Ninth Circuit has expressly stated that failure to purge infringing
9    material after being placed on notice is sufficient to establish contributory
10   infringement. *See A&M Records Inc.* 239 F.3d at 1021 ("We agree that if a
11   computer system operator learns of specific infringing material available on his
12   system and fails to purge such material from the system, the operator knows of and
13   contributes to direct infringement." [citation omitted]).

14        Thus, Werner has established that Defendants Evolve and TotallyHer are
15   contributorily liable for the infringements of the Giant George and Mr. Stubbs
16   Images, and summary judgment should be entered in his favor.

17   **B. Werner Is Entitled To Seek Statutory Damages And Attorneys' Fees.**

18        Werner is also entitled to summary judgment that he is eligible to pursue
19   statutory damages and attorneys' fees. 17 U.S.C. § 412(2) provides that "no award
20   of statutory damages or of attorney's fees, as provided by sections 504 and 505,
21   shall be made for any infringement of copyright commenced after first publication
22   of the work and before the effective date of its registration, unless such registration
23   is made within three months after the first publication of the work."

24        Here it is undisputed that Werner registered the Giant George Image in 2009,
25   prior to its use in the Dogtime Article in 2013. SSUF Nos. 14, 64. It is undisputed
26   that Werner registered the Buffalo Whisperer Images in 2014 and the Wiley Coyote
27   Image in 2013 prior to their use the Crave Article in 2016. SSUF Nos. 20, 28, 47.
28   Finally, it is undisputed that Werner registered the Mr. Stubbs Image on March 13,

2013 prior to its use in the Webecoist Article on March 25, 2013. SSUF Nos. 24, 55.

Thus, Werner has established that he would be entitled to pursue statutory damages and attorneys fees pursuant to 17 U.S.C. § 412, and summary judgment should be entered in his favor.

## IV. WERNER IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE DEFENSES.

Werner is also entitled to summary judgment as to Defendants nine affirmative defenses.

### A. Werner Has Sufficiently Stated A Claim.

Defendants' First Affirmative Defense is "Failure to State A Claim." As stated in section III, *supra*, Werner has validly stated a claim for copyright infringement against all Defendants.

Thus, summary judgment is appropriate as to Defendants' First Affirmative Defense.

### B. Defendants' Use of the Images Was Admittedly Not Authorized.

Defendants' Second Affirmative Defense for "Authorized Use" must also fail. It is undisputed that Werner did not authorize any of the Defendants to use any of his Images in any of the articles or websites in question. Defendants have expressly admitted as such. *See* SSUF No. 54, 63, 68.

Thus, summary judgment is appropriate as to Defendants' Second Affirmative Defense.

### C. Defendants Use of Werner's Images Was Not A Fair Use.

Fair use is an affirmative defense to copyright infringement. Because it is an affirmative defense, a claim of fair use is a tacit admission that the work at issue was used without permission of the copyright holder. *See L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1121 (9th Cir. 1997)("As KCAL undeniably used LANS's copyrighted work without permission, we turn to whether its use was

MOTION FOR SUMMARY JUDGMENT

1   fair.")

2       The Copyright Act lists four factors non-exclusive factors that a court must

3   weigh when determining whether a use is fair: (1) the purpose and character of the

4   use, including whether such use is of a commercial nature or is for nonprofit

5   educational purposes; (2) the nature of the copyrighted work; (3) the amount and

6   substantiality of the portion used in relation to the copyrighted work as a whole;

7   and (4) the effect of the use upon the potential market for or value of the

8   copyrighted work. 17 U.S.C. § 107.

9       The Supreme Court has rejected claims that news reporting is presumptively

10  fair use. *See Harper & Row Publishers, Inc v. Nation Enterprises*, 471 U.S. 539,

11  561 (1985) (holding that "the fact that an article arguably is 'news' and therefore a

12  productive use is simply one factor in a fair use analysis"). In this case, all four

13  factors weigh heavily against a finding of fair use.

14          **1.   *The Purpose And Character Of The Use Weighs Against A Finding Of Fair Use.***

15
16      The first factor directs courts to look specifically at the use made of the

    copyrighted work to determine whether it qualifies for fair use. *See* 17 U.S.C. §107.
17
    In interpreting the "purpose and character" of the use, courts look at whether the
18
    work was transformative, and whether the use was for commercial purposes. *See*
19
    *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579, (1994) (stating that the crux
20
    of fair use is whether "whether the new [use] merely 'supersedes the objects' of the
21
    original creation . . . or instead adds something new, with a further purpose or
22
    different character, altering the first with new expression, meaning, or message; it
23
    asks, in other words, whether and to what extent the new work is 'transformative.'"
24
    [citations omitted]).
25
26      Commercial use is an important consideration in the first fair use factor, and

27  a profit motivation may weigh heavily against fair use. *See Harper & Row*, 471

28  U.S. at 562 (explaining that even straight reporting may, in some cases, be

    "commercial" for purposes of this factor). The crux of the profit/nonprofit

MOTION FOR SUMMARY JUDGMENT

distinction is not whether the sole motive of the use is monetary gain, but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price. *Ibid*.; *see also KCAL-TV*, 108 F.3d at 1121; *see also* 4 *Nimmer & Nimmer*, § 13.05[A][1][c], at 13-167 (noting that "[e]ven if the defendant's purpose in copying is news reporting -- one of the characteristically fair purposes set forth in the preamble to Section 107 -- its profit motivation may negate the fairness of its use under this factor.")

In this case, the Defendants clearly sought to profit off the unauthorized use of Werner's Images. It is undisputed that Defendants received advertising revenue in connection with the articles in which Werner's Images appeared, (*see* SSUF Nos. 52, 60, 66-67) and that Defendants chose to use the Images without paying a licensing fee for use (*see* SSUF Nos. 54, 63, 68). This decision saved Defendants the time and money required to pay a photographer to shoot photographs of the underlying subjects on its own, or the cost of licensing, all the while Defendants gained advertising revenue by exploiting the Images on their websites.

Defendants' use of the Images cannot be considered "transformative" because Defendants used the Images in exactly the manner expected by Werner when he created and licensed the photos in the past: display in conjunction with a news article meant to entertain and inform the public. *See* SSUF No. 7; Werner Decl. ¶¶50-53. Indeed, Defendants do not claim to have altered the photograph itself in any way. Defendants' utilization of the photograph is exactly the object of the original creation. Thus the first factor weight against fair use.

### 2.   *The Nature Of The Copyrighted Work Weighs Against A Finding Of Fair Use.*

The second factor considers "the nature of the copyrighted work." In so doing, the court may consider, among other things, whether the work was creative, imaginative, and original, . . . and whether it represented a substantial investment of time and labor made in anticipation of financial return. *Pro Arts, Inc. v. Hustler Magazine, Inc*. 787 F.2d 592 (6th Cir. 1986) (quotation omitted).

MOTION FOR SUMMARY JUDGMENT

1    Photos are generally viewed as creative, aesthetic expressions of a scene or

2    image and have long been the subject of copyright. See 17 U.S.C. § 102(a)(5)

3    (extending copyright protection to "pictorial, graphic, and sculptural works"). In the

4    seminal case protecting photos, the Supreme Court held that a photographic portrait

5    of Oscar Wilde was entitled to copyright protection because of various creative

6    elements employed by the photographer. *Burrow–Giles Lithographic Co. v. Sarony*,

7    111 U.S. 53, 61 (1884).

8    Werner's Images are clearly subject to protectable copyright. See 17 U.S.C. §

9    102(a)(5). It is undisputed that Werner is in the business of licensing his

10   photographs to publications for profit. *See* SSUF Nos. 7, 9, 16, 21, 29. Indeed,

11   Werner is well known for the unique and rare subject matter that he photographs,

12   and expends a significant amount of time and effort to obtain the photographs that

13   he licenses with the expectation of gaining a financial return through licensing fees.

14   *See* SSUF Nos. 1-10.

15   The nature of Werner's Images weighs against a finding of fair use.

16   **3.  *The Amount And Substantiality Of The Portions Used Weighs Against A Finding Of Fair Use.***

17   The third fair use factor directs courts to examine the amount and

18   substantiality of the portion used in relation to the copyrighted work as a whole.

19   The statutory language thus directs courts to evaluate this factor in relation to the

20   plaintiff's work, not the defendants. *See Sheldon v. Metro-Goldwyn Pictures Corp*.,

21   471 U.S. 539, 565 (1985) (stating that "no plagiarist can excuse the wrong by

22   showing how much of his work he did not pirate").

23   In *KCAL-TV*, KCAL broadcast only 30 seconds of a four minute, forty

24   second clip. *KCAL-TV*, 108 F.3d at 1120. The court held that the amount and

25   substantiality of the use weighed against application of fair use. *Id.* at 1122. The

26   *KCAL-TV* court also pointed to *Harper & Row*, stating that "the fact that a

27   substantial portion of the infringing work was copied verbatim is evidence of the

28   qualitative value of the copied material, both to the originator and to the plagiarist

MOTION FOR SUMMARY JUDGMENT

who seeks to profit from marketing someone else's copyrighted expression." *Ibid.*, *citing Harper & Row*, 471 US. at 565.

In the case at hand, Defendants did not just use a portion of Werner's Images, rather Defendant used exact duplicates. Since the Defendants used the entirety of Werner's photographs the third factor weighs heavily against the application of fair use.

### 4.   *The Effect On The Market Place Weighs Against A Finding Of Fair Use.*

Finally, the fourth element looks to the effect of the use upon the potential market for or value of the copyrighted work. This factor requires the court to consider the extent of market harm caused by the particular actions of the infringer, as well as whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market' for the original." *Burnett v. Twentieth Century Fox Film Corp*, 491 F.Supp.2d 962, 971 (C.D.Cal. 2007), citing Campbell, 510 U.S. at 590.

Here, Werner's business depends on his ability to convince publications to pay a licensing fee to use his photographs. Unlicensed use of the Images of the sort engaged in by Defendants would severely undermine the market for Werner's Images. *See* SSUF No. 10. Additionally, the voluminous traffic on Defendants' various websites allows for the significant increase in potential downstream infringement, diminishing exclusivity of the Images. As such, the fourth element weights against a finding of fair use.

In conclusion, the statutory factors weight heavily against a finding of fair use. Thus, summary judgment is appropriate as to Defendants' Third Affirmative Defense.

### D. Defendants Use of Werner's Images Was Not A *De Minimis* Use

Defendants' Fourth Affirmative Defense that any alleged infringement is "*de minimis*" must also fail. Defendants did not just use a portion of Werner's Images,

rather Defendants used complete, unaltered duplicates. Such substantial appropriation cannot be considered *de minimis*. *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2003)(citing *Fisher v. Dees,* 794 F.2d 432, 434 n. 2 (9th Cir. 1986) ("[A] taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation")).

Thus, summary judgment is appropriate as to Defendants' Fourth Affirmative Defense.

### E. Defendants Are Not Entitled to Safe Harbor Protection.

For Defendants Fifth Affirmative Defense, they claim "safe harbor" under 17 U.S.C. § 512. The Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, established four safe harbors to provide protection from liability for copyright infringement for: (1) transitory digital network communications; (2) system caching; (3) information residing on systems or networks at the direction of users; and (4) information location tools." *Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc*., 853 F.3d 1020, 1027 (9th Cir. 2017). At issue in this case is the § 512(c) safe harbor for "infringement of copyright by reason of the storage [of material] at the direction of a user." 17 U.S.C. § 512(c)(1).

Section 512(c)(2) "plainly specifies that a registered agent is a predicate, express condition" that must be met and that "the safe harbor will apply 'only if' such agent has been designated and identified to the Copyright Office for inclusion in the directory of agents.'" *Perfect 10, Inc. v. Yandex N.V.* 2013 WL 1899851, at *8 (N.D. Cal. May 7, 2013). At least one court has found that the subsequent designation of a DMCA-related agent does not protect a service provider from infringing activity that occurred before the designation. *Nat'l Photo Group, LLC v. Allvoices, Inc.*, 2014 WL 280391, at *4 (N.D. Cal. Jan. 24, 2014) ("Plaintiff's claims predate Defendant's DMCA protection since Defendant's allegedly infringing activity began a number of weeks or months prior to Defendant's DMCA registration"); *see also Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 2010

WL 5598337, at *7 (N.D. Cal. Mar. 19, 2010) ("At a minimum, Defendants would not be able to claim the protection of the safe harbor provisions prior to designating an agent."); see also *Oppenheimer v. Allvoices, Inc*., 2014 WL 2604033 (N.D. Cal. June 10, 2014).

The Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, established four safe harbors to provide protection from liability for copyright infringement for: (1) transitory digital network communications; (2) system caching; (3) information residing on systems or networks at the direction of users; and (4) information location tools." *Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc*., 853 F.3d 1020, 1027 (9th Cir. 2017). At issue in this case is the § 512(c) safe harbor for "infringement of copyright by reason of the storage [of material] at the direction of a user." 17 U.S.C. § 512(c)(1).

The Crave and Webecoist Articles themselves would not come within the purview of DMCA safe harbor because they do not constitute content uploaded "at the direction of users." *Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc., 853 F.3d 1020, 1028 (9th Cir. 2017).* Instead, the Crave and Webecoist Articles, which contained, the Buffalo Whisperer, Wiley Coyote, and Mr. Stubbs Images, were posted by Defendant Evolve, and not by a third party user. *See* SSUF Nos. 47, and 55.

Here, the Giant George Image was posted prior to Defendants' DMCA registrations taking effect. *See* Index of Exhibits 27-29. Regardless, the § 512(c) safe harbor is available only if the service provider "does not have actual knowledge that the material or an activity using the material on the system or network is infringing," 17 U.S.C. § 512(c)(1)(A)(i), "is not aware of facts or circumstances from which infringing activity is apparent," *id*. § 512(c)(1)(A)(ii), and "upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material," *id*. § 512(c)(1)(A)(iii).

Here, there is no question that Wolff, acting on Werner's behalf, repeatedly

1   provided actual notice of the infringement of the Giant George Image to Defendants
2   in 2017. *See* SSUF Nos. 69-82. Despite the repeated notice to Defendants, and the
3   filing of a lawsuit against them, as of the date of this Motion, the Giant George
4   Image is still posted on www.dogtime.com. *See* SSUF Nos. 84-85. In addition,
5   Defendants continued to reap advertising revenues for the Dogtime Article in
6   question. *See* IOE 23. Thus Defendants have not "expeditiously removed" the Giant
7   George Image and do not qualify for DMCA protection.

8   Additionally, Defendants use of the Buffalo Whisperer, Wiley Coyote, and
9   Giant George Images would not come within the purview of DMCA safe harbor
10  because they would not constitute content posted "at the direction of users." *Mavrix
11  Photographs, Ltd. Liab. Co. v. LiveJournal, Inc.,* 853 F.3d 1020, 1028 (9th Cir.
12  2017). It is undisputed that the Crave and Webecoist Articles were posted by
13  Defendant Evolve directly, and not a third party user. *See* SSUF Nos. 47 and 55.

14  Thus, summary judgment is appropriate as to Defendants' Fifth Affirmative
15  Defense.

16  **F. Failure To Mitigate Damages Is Not An Affirmative Defense.**

17  Defendants' Sixth Affirmative Defense for "Failure to Mitigate Damages"
18  must also fail. "The existence of damages suffered is not an essential element of a
19  claim for copyright infringement." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 158
20  (2d Cir. 2001), *as amended* (May 15, 2001) (citing *Feist*, 499 U.S. at 361); *see
21  also* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01, at 13-
22  6 *159 (1999) ("Notably absent from this formulation of the prima facie case is
23  damage or any harm to [the] plaintiff resulting from the infringement.").

24  Thus, "failure to mitigate damages" does not go to the heart of liability for
25  copyright infringement and is not a proper affirmative defense. *See Interscope
26  Records, Motown Record Co., L.P. v. Time Warner, Inc.*, No. CV 10-1662 SVW
27  (PJWx), 2010 U.S. Dist. LEXIS 151460, at *44-48 (C.D. Cal. June 28,
28  2010)(striking affirmative defense of "failure to mitigate damages" as implausible

and at odds with purposes of the Copyright Act.)

Thus, summary judgment is appropriate as to Defendants' Sixth Affirmative Defense.

### G. The Lack Of Volitional Act Defense Must Fail.

Defendants' Seventh Affirmative Defense is "Lack of Volitional Conduct." As stated in section III, *supra*, Defendants have engaged in volitional conduct with respect to three of Werner's Images. Further, as stated above, Defendants can also be held liable on theories of contributory and vicarious infringement which do not required a volitional act.

Thus, summary judgment is appropriate as to Defendants' Seventh Affirmative Defense.

### H. Defendant's First Amendment/Free Speech Defense Must Fail

Defendants' Eighth Affirmative Defense for "First Amendment/Free Speech" must also fail. It is undisputed that Werner did not authorize any of the Defendants to use any of his Images in any of the articles or websites in question. Defendants have expressly admitted as such. *See* SSUF No. 54, 63, 68.

The "Supreme Court . . . has made it unmistakably clear that the First Amendment does not shield copyright infringement." *Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 220 (S.D.N.Y. 2000); *see Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 568, (1985) (rejecting First Amendment challenge to copyright infringement action); *Zacchini v. Scripps-Howard*, 433 U.S. 562, 574-78, (1977). In other words, "the First Amendment is not a license to trammel on legally recognized rights in intellectual property." *In re Capital Cities/ABC, Inc.*, 918 F.2d 140, 143 (11th Cir. 1990) (quotations omitted). Indeed, copyrights serve as important incentives to encourage and protect expression: "the Framers intended copyright itself to be the engine of free expression." *Eldred v. Ashcroft*, 537 U.S. 186 (2003), (quoting *Harper & Row*, 471 U.S. at 558). "By establishing a marketable right to the use of one's expression,

MOTION FOR SUMMARY JUDGMENT

copyright supplies the economic incentive to create and disseminate ideas." *Ibid.*

Thus, summary judgment is appropriate as to Defendants' Eighth Affirmative Defense.

### I. Speculative Damages Defense Is Not An Affirmative Defense

Defendants' final Affirmative Defense for "Speculative Damages" must also fail. As explained in section IV.F, *supra*, damages is not an element of a copyright infringement claim, and therefore an affirmative defense for "speculative damages" cannot defeat liability.

Thus, summary judgment is appropriate as to Defendants' Ninth Affirmative Defense.

### V. CONCLUSION

In conclusion, Defendant Jeffery R. Werner respectfully requests that summary judgment be entered in his favor and against Defendants Evolve Media, LLC, CraveOnline, LLC and TotallyHer Media, LLC.

DATED: March 9, 2020                    Respectfully submitted,

 

                                    **/s/ Ryan E. Carreon**
                                    Ryan E. Carreon, Esq.
                                    Cal. Bar No. 311668
                                    **HIGBEE & ASSOCIATES**
                                    1504 Brookhollow Dr., Ste 112
                                    Santa Ana, CA 92705-5418
                                    (714) 617-8336
                                    (714) 597-6559 facsimile
                                    *Counsel for Plaintiff*

# PROOF OF SERVICE

I, the undersigned, say:

I am a citizen of the United States and I am a member of the Bar of this Court. I am over the age of 18 and not a party to the within action My business address is 1504 Brookhollow Dr., Ste 112, Santa Ana, California, 92705.

On March 9, 2020 I caused to be served the foregoing documents:

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; DECLARATION OF RYAN E. CARRREON; DECLARATION OF JEFFERY R. WERNER; DECLARATION OF BRIAN R. WOLFF; SEPARATE STATEMENT OF UNDISPUTED FACTS; INDEX OF EXHIBITS AND EVIDENCE; EXHIBITS 1 THROUGH 31; [PROPOSED] ORDER**

X      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California using the CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

**Ricardo Alan Chavez**      rchavez.law@gmail.com

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on March 9, 2020 at Santa Ana, California.

*/s/ Ryan E. Carreon*
Ryan E. Carreon