1 Mathew K. Higbee, Esq., SBN 241380
2 Ryan E. Carreon, Esq., SBN 311668
**HIGBEE & ASSOCIATES**
3 1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
4 (714) 617-8336
(714) 597-6729 facsimile
5 Email: mhigbee@higbeeassociates.com
rcarreon@higbeeassociates.com
6
Attorney for Plaintiff,
7 JEFFERY R. WERNER,

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY R. WERNER,<br><br>　　　　　　　Plaintiff,<br>v.<br>EVOLVE MEDIA, LLC; CRAVEONLINE, LLC; TOTALLY HER MEDIA, LLC and DOES 3-25, inclusive,<br><br>　　　　　　　Defendants. | Case No. 2:18-cv-07188-VAP-SK<br><br>**NOTICE OF MOTION AND MOTION TO ASSESS STATUTORY DAMAGES**<br><br>Hearing Date: June 22, 2020<br>Hearing Time: 2:00 p.m.<br>**Courtroom:** 8A |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 22, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Virginia A. Phillips of the above-titled court, located at the United States Courthouse, 350 West First St., Los Angeles, CA, 90012, Courtroom 8A, 8th Floor, Plaintiff Jeffery R. Werner ("Plaintiff" or "Werner") will move for an award of statutory damages for copyright infringement in the amount of $200,000 against Defendants Evolve Media, LLC ("Defendant Evolve"), CraveOnline, LLC ("Defendant Crave"), and Defendant Totally Her Media, LLC ("Defendant Totally Her") pursuant to 17 U.S.C. § 504(c).

Prior to the filing of this Motion, on April 30, 2020 Plaintiff's counsel met

and conferred with Defendants' counsel Ricardo Chavez in accordance with Local Rule 7-3. Declaration of Ryan E. Carreon ("Carreon Decl.") ¶3.

This Motion is based on this Notice of Motion, the attached memorandum of points and authorities, the declarations of Ryan E. Carreon, Jeffery R. Werner, and Brian R. Wolff in support, and the pleadings, files and other materials that are on file with the Court or may be presented at the hearing.

DATED: May 25, 2020

Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile
*Counsel for Plaintiff*

ii
**MOTION FOR STATUTORY DAMAGES**

## **TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………..1

II. LEGAL AUTHORITY FOR AWARDING STATUTROY DAMAGES
…………………………………………………………………………………3

    A. **Defendant's Actions Are Willful And Should Be Subject To An Enhanced Award Of Statutory Damages**…………………………..4

    B. **Werner Should Be Awarded Two To Three Times His License Fee In Statutory Damages**……………………………………………7

III. CONCLUSION……………………………………………………………14

## TABLE OF AUTHORITIES

*Cases*

*Broad. Music Inc. v. Paden*, 2011 WL 6217414, at *5 (N.D. Cal. Dec. 14, 2011)…8

*Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 198 (S.D.N.Y. 2016)……………………………………………………………………………...8

*Castle Rock Entm't v. Carol Publ'g Group, Inc*., 955 F. Supp. 260, 267 (S.D.N.Y. 1997)……………………………………………………………………………...5

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, (1952)…...4, 7

*Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)………………4

*L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, (1919)……………4

*Lauratex Textile Corp. v. Allton Knitting Mill*s, 519 F. Supp. 730 (S.D.N.Y. 1981).4

*Leegin Creative Leather Prod., Inc. v. Belts by Nadim, Inc.*, 316 F. App'x 573, 575 (9th Cir. 2009)……………………………………………………………………...7

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.,* 149 F.3d 987, 996 (9th Cir.1998)……………………………………………………………………………7

*Michael Grecco Prods., Inc. v. WrapMarket, LLC*, 2017 WL 10434020, at *5 (C.D. Cal. Nov. 8, 2017)…………………………………………………………………..8

*New World Music Co. v. Tampa Bay Downs, Inc.,* 2009 U.S. Dist. LEXIS 1221 *32, 2009 WL 35184 (M.D.Fla., Jan. 6, 2009)…………………………………….8

*Nintendo of America, Inc. v. Dragon Pacific Intern.*, 40 F.3d 1007, 1012 (9th Cir. 1994)………………………………………………………………………………..8

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990)…..4, 5

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014)…………...8

*Pye v. Mitchell*, 574 F.2d 476 (9th Cir. 1978)……………………………………..5

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 748 (9th Cir. 2019)…………………5

*Statutes*

17 U.S.C. § 504(c)(1)……………………………………………………….3, 4, 5

17 U.S.C. § 504(c)(2)…………………………………………………………..3, 5

17 U.S.C. §§ 504(a)(1)-(2)……………………………………………………….3

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  INTRODUCTION

This is a copyright infringement case brought by Plaintiff Jeffery R. Werner ("Werner") against Defendants Evolve Media, LLC, and its wholly owned subsidiaries CraveOnline, LLC, and Totally Her Media, LLC (collectively "Defendant Evolve").

Werner is a professional photographer with more than 35 years of experience.[1] His work has appeared in popular publications such as Life, Time, and Newsweek, as well as on television shows such as That's Incredible!. Much of his work focuses on "exotic animals, sideshow eccentricities, and people who have overcome incredible obstacles."

In 2009, Plaintiff captured a series of photographs of "Giant George," who was considered to be the world's tallest dog. One of the photos ("Giant George Image") depicts George and his owner, Dave Nasser. In 2012, Plaintiff captured a series of photographs of R.C. Bridges, nicknamed the "Buffalo Whisperer," who shares his home with "Wildthing," a 2,400 pound buffalo, and "Bullet," a 900 pound buffalo. One of these photos ("Buffalo Whisperer Image") depicts Bridges roping Wildthing and Bullet. In 2013, Plaintiff captured a series of photographs of "Mr. Stubbs," the first alligator to be fitted with a prosthetic tail. One of those photographs ("Mr. Stubbs Image") depicts Mr. Stubbs baring his teeth. Finally, in 2013, Plaintiff took a series of photographs of "Wiley," a coyote born in the wild and domesticated, and kept as a pet by an eight-year-old named Hailey Hanestad. One of these photos ("Wiley Coyote Image") depicted Wiley and Hailey sitting on Hailey's bed.

Werner registered his Images with the United States Copyright Office.

Defendant Evolve through its wholly owned subsidiaries operates the

---

[1] The facts recounted in this section are drawn from the Court's April 28, 2020 Order (Dkt. #68) unless otherwise noted.

websites www.craveonline.com, www.momtastic.com and its subdomain www.webecosit.com, and www.dogtime.com. Defendant Evolve supervises and controls the use of photographic imagery on its subsidiaries' websites through a written Image Use Policy which outlines required procedures related to submission and use of photographic images. Defendant Evolve's March 24, 2016 Image Use Policy encourages unlicensed imagery to be used in meme or GIFs stating "[w]hile this is considered copyright infringement legally speaking, content owners might not press the issue because it may help to integrate their brands into the culture to have their works copies [sic] around the internet in very small bites." Dkt. #66-23. Furthermore, as part of Defendant Evolve's policies and procedures, a Managing Editor reviews content before it is published.

On June 20, 2016, Defendant Evolve posted an article on www.craveonline.com titled "10 People With Incredibly Badass Pets" ("Crave Article"). The Crave Article included unlicensed copies of Werner's Buffalo Whisperer and Wiley Coyote Images. On March 25, 2013, Defendant Evolve posted an article on www.webecoist.momtastic.com title "Bionic Animals: 10 Creatures Thriving with Prosthetics" ("Webecoist Article"). The Webecoist Article included an unlicensed copy of Werner's Mr. Stubbs Image. In addition, the Mr. Stubbs Image as it appeared in the Webecoist Article contained a visible watermark indicating that that Mr. Stubbs Image was protected by copyright. *See* Dkt. #1-2, p. 29. Finally, in December 2013, an article appeared on www.dogtime.com titled "Best dog pictures of 2013" ("Dogtime Article"). The Dogtime Article included an unlicensed copy of Werner's Giant George Image.

Defendant Evolve received advertising revenue in connection with all three articles.

Josh Ellingwood is General Counsel for Defendant Evolve and its subsidiaries, all of which have designated Ellingwood as their authorized agent to receive notifications for copyright infringement claims at their principal place of

business. Beginning in May 2017, Werner acting through his agent Brian R. Wolff, sent repeated cease and desist letters to Ellingwood, which Defendant Evolve ignored.

On August 16, 2018, Werner commenced this action. At the time of filing of this action, the Mr. Stubbs and Giant George Images were still displayed on the www.webecoist.momtastic.com and www.dogtime.com, respectively. The Giant George Image was still displayed on www.dogtime.com as of March 9, 2020.

On March 19, 2020, Werner moved for summary judgment as to liability. Dkt. #66. On April 28, 2020, the Court granted Werner's summary judgment motion (Dkt. #68) and entered judgment in favor of Werner (Dkt. #69) finding Defendants Evolve and CraveOnline jointly liable for infringement of the Buffalo Whisperer and Wiley Coyote Images, and Defendants Evolve and Totally Her jointly liable for infringement of the Mr. Stubbs and Giant George Images. The Court also held that Werner was entitled to pursue an award of statutory damages for each of the four Images. Dkt. #69.

On May 18, 2020 the Court Ordered Werner to file the instant Motion to assess statutory damages. Dkt. #75.

## II. LEGAL STANDARD FOR AWARDING STATUTORY DAMAGES

The owner of a registered copyright that has been infringed can elect to recover either actual damages or statutory damages. 17 U.S.C. §§ 504(a)(1)-(2), 504(c). The Copyright Act provides for "an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000." 17 U.S.C. § 504(c)(1). If the infringement is willful, the range of statutory damages may be increased to up to $150,000 per work. 17 U.S.C. § 504(c)(2).

Regarding the amount of a proper statutory damages award, the district court has "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima" set forth in the

statute. *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (citing *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, (1919)). An award may be in such amount "as the court considers just." 17 U.S.C. § 504(c)(1); *see Lauratex Textile Corp. v. Allton Knitting Mill*s, 519 F. Supp. 730 (S.D.N.Y. 1981), (holding that defendant's profits of $5,177 would "provide a basis for examining an appropriate amount of statutory damages," but in view of defendant's willfulness, awarded statutory damages of $40,000).

Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages "whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant," *Harris*, 734 F.2d at 1335, in order "'to sanction and vindicate the statutory policy' of discouraging infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990) (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, (1952)).

Here, in granting summary judgment in favor of Werner, the Court found that Werner was eligible to seek four separate awards of statutory damages; one for each of the four Images infringed. *See* Dkts. #68-69. Four separate awards is proper because each Image constitutes a separate "work" and is thus independently eligible for an award of statutory damages. 17 U.S.C. § 504(c)(1). While Werner has elected to seek statutory damages he will nonetheless present evidence of his lost license fees[2] as part of this Motion in order to assist the Court in exercising its discretion to award statutory damages.

### A. Defendant's Actions Are Willful And Should Be Subject To An Enhanced Award Of Statutory Damages.

The Copyright Act provides for "an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of

---

[2] Because the Court may award statutory damages within the prescribed statutory range regardless of the adequacy of the evidence presented by Werner of his actual damages, the Court need not hold an evidentiary hearing.

not less than $750 or more than $30,000." 17 U.S.C. § 504(c)(1). If the infringement is willful, the range of statutory damages may be increased to up to $150,000 per work. 17 U.S.C. § 504(c)(2).

The test for willfulness is in the alternative: *either* actual notice *or* recklessness shown by reckless disregard or turning a blind eye to infringement. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 748 (9th Cir. 2019). Reckless disregard can be demonstrated, for example, when a party refuses, to even investigate or attempt to determine whether particular photos are subject to copyright protections. *Id.* at 748; *see also Castle Rock Entm't v. Carol Publ'g Group, Inc.*, 955 F. Supp. 260, 267 (S.D.N.Y. 1997)(finding defendants showed "reckless disregard" as to copyright infringement where work included copyright notice, defendants were sophisticated with respect to copyright law, and defendants continued to infringe the work after receiving a cease and desist letter from plaintiffs).

Continued use after notice constitutes willful infringement. *See Pye v. Mitchell*, 574 F.2d 476 (9th Cir. 1978)(finding defendants liable for higher statutory damages because defendants had actual notice of the infringement in the form of a written release of liability, yet defendants continued to infringe); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir.1990), cert. denied, 498 U.S. 1109 (1991) (holding that licensee willfully infringed copyright by continuing to make recordings of copyrighted works after receiving written notice of termination from the copyright owners).

In this case, Defendant Evolve's infringing acts were clearly willful. Firstly, as the Court noted in its summary judgment Order, Defendant Evolve has a written Image Use Policy that outlines required procedures regarding the use of photographic imagery on its websites, and a Managing Editor reviews each editorial submission prior to posting it online. *See* Dkt. #68. However, Defendant Evolve's own policies clearly evidence willful disregard for copyright. For example,

**MOTION FOR STATUTORY DAMAGES**

Evolve's March 24, 2016 Image Use Policy encourages unlicensed imagery to be used in certain formats stating "[w]hile this is considered copyright infringement legally speaking, content owners might not press the issue because it may help to integrate their brands into the culture to have their works copies [sic] around the internet in very small bites." Dkt. #66-23.

Second, it is clear that Defendant Evolve is a repeat infringer of copyright. Not only did it infringing multiple of Werner's Images across multiple articles on multiple separate websites, Defendant Evolve has been sued at least ten separate times for copyright infringement of photographs. Carreon Decl. ¶¶5-7, Exhibit A.

Third, Werner's Mr. Stubbs Image as used by Defendant Evolve contained a visible watermark in the bottom left hand corner, which expressly indicated that the Image was protected by copyright. *See* Dkt. #1-2, p. 29. Despite this clear watermark, Defendant Evolve caused the Mr. Stubbs Image to be published.

Finally, and perhaps most egregiously, as the Court observed in its summary judgment Order, Werner's representatives sent no less than three cease and desist letters to Defendant Evolve's general counsel Josh Ellingwood. *See* Dkt. #68 Werner's representatives also corresponded with Ellingwood via email, and even spoke with Ellingwood on the phone to discuss the infringements at issue. *See* Dkt. #68. Despite these remarkable efforts, at the time Werner filed suit, Defendant Evolve had still not removed the Mr. Stubbs and Giant George Images, and when Werner filed a motion for summary judgment in March 2020, nearly two years into litigation, Defendant Evolve still had not removed the Giant George Image. *Ibid.*

It is abundantly clear that Evolve has acted willfully. Defendant Evolve's detailed image use policies evidence Defendant Evolve's knowledge and awareness of copyright laws, especially as it related to use of photographs. Indeed, Defendant Evolve's own policy acknowledges and encourages its content creators to completely ignore copyright laws in many instances. The effect of this policy is evidence not only in the infringements in this case, but also by the fact that

MOTION FOR STATUTORY DAMAGES

Defendant Evolve has been sued on multiple occasions for photography infringement, and the fact the Defendant Evolve apparently ignored the clear watermark on Werner's Mr. Stubb's Image. Finally, Defendant Evolve's own general counsel and designated agent for receiving copyright notifications repeatedly ignored Werner's cease and desist efforts prior to filing suit. Defendant Evolve's ignorance is so egregious that at least two of the Images remained in use years after the first cease and desist was sent. To call Defendant Evolve's conduct "reckless" would be charitable. It is clear, that Defendant Evolve has acted with knowledge of its actions and has taken the calculated risk that it is more profitable to infringe and hope to avoid being caught rather than to pay market value license fees.

Therefore, the Court should deem Defendant Evolve's conduct in this matter to be willful and subject to the enhanced statutory damages set forth in 17 U.S.C. § 504(c)(2).

### B. Werner Should Be Awarded Two To Three Times His License Fee In Statutory Damages.

"[I]t is well established that statutory damages may be imposed for both punitive and compensatory purposes." *Leegin Creative Leather Prod., Inc. v. Belts by Nadim, Inc.*, 316 F. App'x 573, 575 (9th Cir. 2009) citing *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.,* 149 F.3d 987, 996 (9th Cir.1998). Because the amount awarded is discretionary, a court is free to exercise its judgment to make any award that falls within the permissible statutory range "whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant," *Harris*, 734 F.2d at 1335. The Supreme Court has stated that "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within [the] statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. *Woolworth Co.,* 344 U.S. at 233; *see also Los Angeles News Service*, 149 F.3d at 996 (no need for

evidence of actual damages); *Nintendo of America, Inc. v. Dragon Pacific Intern.*, 40 F.3d 1007, 1012 (9th Cir. 1994)(emphasizing punitive and deterrent goals).

It is common for a court to use a multiple of lost licensing revenues as a starting point for calculating statutory damages. *See generally Michael Grecco Prods., Inc. v. WrapMarket, LLC*, 2017 WL 10434020, at *5 (C.D. Cal. Nov. 8, 2017) (awarding $60,000 in statutory damages for photography infringement calculated as three times the license fee); *Broad. Music Inc. v. Paden*, 2011 WL 6217414, at *5 (N.D. Cal. Dec. 14, 2011) (noting that "courts have consistently held that a statutory damages award three times the amount that the plaintiff would have received in licensing fees is appropriate under § 504(c)"); *New World Music Co. v. Tampa Bay Downs, Inc.,* 2009 U.S. Dist. LEXIS 1221 *32, 2009 WL 35184 (M.D.Fla., Jan. 6, 2009) ("In keeping with the principle of awarding statutory damages to deter wrongful conduct, courts often award damages based on some multiple of unpaid licensing fees*; see also Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 198 (S.D.N.Y. 2016) ("[A] statutory damage award should significantly exceed the amount of unpaid license fees," so as to put "infringers on notice that it costs less to obey the copyright laws than to violate them;" Awarding statutory damages equating approximately five times plaintiff's actual damages). However, there need not be a direct correlation between statutory and actual damages. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014).

Here, while Werner does not seek actual damages and does not ask the Court to make a determination about the appropriate amount of actual damages, nonetheless, Werner has presented evidence of the licensing value of his Images as a means to help inform an award of statutory damages. As set forth in his Declaration, all of Werner's Images are "rights managed" which means that license fees are based upon the scope of the usage desired by the client. Werner Decl. ¶¶24-25. Scope is defined by the type of media, size and quantity of the reproductions, regions of distribution, duration of use, exclusivity, and other factors. Werner Decl.

**MOTION FOR STATUTORY DAMAGES**

¶24. In general, for "rights managed" photographs the greater the scope of the usage, the greater the licensing fee paid by the client. Werner Decl. ¶24.

To calculate the license fee for the Images, Werner utilizes industry standard software called fotoQuote. Werner Decl. ¶26. The software allows user to input a number of individual factors to generate a quote. Werner Decl. ¶27. The licensing figures generated by the fotoQuote software are based on actual sales records from photographers and photo buyers and compiled by fotoQuote, in order to ensure that figure generated comports with the actual market value of similar Rights Managed photographs. Werner Decl. ¶28. Once the various factors are selected, fotoQuote then generates a low, medium, and high licensing figure that the photographer can use to negotiate a license. Werner Decl. ¶29.

In order to calculate the license fee for the Images as used by Defendant Evolve, Werner selected "website editorial" usage in fotoQuote since the infringing use of the Images on Defendant's Evolve's websites appears to be editorial in nature. Werner Decl. ¶30.

Next, Werner selected options related to the production of the Images including that they were model released, had high production costs, were high risk, and required special equipment. Werner Decl. ¶31. The term "model release" refers to a legal release that photographers might obtain from individuals depicted in their photographs granting the photographer permission to publish photographs containing their likeness or image. It Werner' practice to obtain a model release for all of his photographs, including the Images, as it increases their licensing value, which is why that factor was selected in fotoQuote. Werner Decl. ¶32.

Each of the Images also had high production costs and required special equipment, which is why these factors were selected. Werner Decl. ¶33. Each of the shoots for the Images involved travel and equipment transportation costs for Werner, and multiple paid assistants, and also included substantial amounts of specialized equipment such as multiple cameras and lenses, lighting rigs, safety

gear, etc. which greatly increased the overall production costs. Werner Decl. ¶33. For example, the lease expensive shoot of the four Images, for Giant George, cost over $6,500 to produce, while the most expensive shoot, for Buffalo Whisperer, cost over $25,000 to produce. Werner Decl. ¶34.

Additionally, each of the Images were high risk because they involved dangerous and/or wild animals. Werner Decl. ¶35. In particular, the Buffalo Whisperer, Mr. Stubbs, and Wiley Coyote Images required that Werner, his crew, and our equipment be placed in potentially dangerous or perilous situations in order to capture the best photographs. Werner Decl. ¶35.

Finally, with respect to the duration of the license, it is Werner's practice to calculate licensing on a monthly or weekly basis. Werner Decl. ¶37. Because it requires high levels of skill and risk to successfully create photographs of these types of subject matter, and because of the unique and viral nature of Werner's photographs, Werner's work and in particular these Images, are highly sought after. Werner Decl. ¶38.

Werner typically quotes licenses on a monthly or weekly basis in order to maximize the value of his photographs by maintaining their exclusivity and rarity and to prevent over saturation of the market, which would ultimately drive down their value. In addition to maintaining exclusivity, limiting the amount of time his photographs appear online also helps prevent so called "down stream" infringements which are caused by individuals who unlawfully download images from licensed publications to use on a separate online publication without paying a license fee. Werner Decl. ¶39.

Werner does not ever license any of his photographs for unlimited perpetual duration or use. Werner Decl. ¶40. Because of this, in the fotoQuote software Werner set the license duration to one month, which, when combined with the factors described above, generated a low, medium, and high license fee of $333, $445, and $667 per month per Image for Defendant Evolve's infringing use.

**MOTION FOR STATUTORY DAMAGES**

Werner Decl. ¶41, Exhibit A.

The fotoQuote fees generated are commensurate with previous license fees that Werner has charged and been paid for these particular Images for monthly licenses. Werner Decl. ¶43. In 2014, for the Wiley Coyote Image, Werner was paid $700 by a North American publication for a one-time use in print and two weeks online. Werner Decl. ¶44, Exhibit B. In 2010, Werner was paid a fee of €471.60 ($660.30 USD[3]) for one month's use of the Giant George Image in Norway; €474.18 ($584.18 USD) for one month's use of the Giant George Image in Germany; and €501.09 ($686.49 USD) for one month's use of the Giant George Image in Spain. Werner Decl. ¶45, Exhibit C. In 2012, Werner was paid a fee of £630.00 ($976.50 USD) for one month's use of the Buffalo Whisperer Image in the U.K.; and €474.18 ($584.18 USD) for one month's use of the Buffalo Whisperer Image in Germany. Werner Decl. ¶46, Exhibit D. In 2013, Werner was paid a fee of €439.84 ($562.99 USD) for one month's use of the Mr. Stubbs Image in Germany. Werner Decl. ¶47, Exhibit E.

Given the fotoQuote fee and the actual licenses sold as discussed above, Werner believes the mid range fotoQuote fee of $445 per month per Image represents a fair market value that Werner would have charged Defendant Evolve had it properly licensed the Images. Werner Decl. ¶48.

With respect to the Wiley Coyote Image, it appeared in an article on Defendant Evolve's website dated June 20, 2016. It appears to have been removed from the website after May 16, 2017 when the first cease and desist letter was sent to Evolve. Werner Decl. ¶49. Therefore, taking the 12 months of usage multiplied by the fotoQuote fee of $445 a month, Werner's lost license fee for the Wiley Coyote Image is $5,340. Werner Decl. ¶50.

---

[3] The exchange rates set forth in this declaration were obtained from https://www.xe.com/currencytables/ based on the exchange rate during the week each invoice is dated. Werner requests that the Court take judicial notice of these exchange rates pursuant to FRE 201.

With respect to the Buffalo Whisper Image, it appeared in an article on Defendant Evolve's website dated June 20, 2016. It appears to have been removed from the website after May 16, 2017 when the first cease and desist letter was sent to Evolve. Werner Decl. ¶51. Therefore, Taking the 12 months of usage multiplied by the fotoQuote fee of $445 a month, Werner's lost license fee for the Buffalo Whisperer Image is $5,340. Werner Decl. ¶52.

With respect to the Mr. Stubbs Image, it appeared in an article on Defendant Evolve's website dated March 25, 2013. It was not removed despite repeated cease and desist letter being sent to Defendant Evolve and was still posted on Defendant Evolve's website when this lawsuit was instituted in August of 2018, but was removed sometime after. Werner Decl. ¶53. Assuming it was removed in immediately after the lawsuit was filed August of 2018, it was used for approximately 65 months by Defendant Evolve. Werner Decl. ¶54. Therefore, taking the 65 months of usage multiplied by the fotoQuote fee of $445 a month, Werner's lost license fee for the Mr. Stubbs Image is $28,925. Werner Decl. ¶55.

With respect to the Giant George Image, it appeared in an article on Defendant Evolve's website that appears to be dated December 2013. It was not removed despite repeated cease and desist letter being sent to Defendant Evolve and was still posted on Defendant Evolve's website when this lawsuit was instituted in August of 2018 and when Werner moved for summary judgment in March of 2020. Werner Decl. ¶56. Thus, it was used for approximately 75 months by Defendant Evolve. Werner Decl. ¶57. Therefore, taking the 75 months of usage multiplied by the fotoQuote fee of $445 a month, Werner's lost license fee for the Giant George Image is $33,375. Werner Decl. ¶58.

As discussed above, not only does Werner believe that Defendant Evolve's actions were willful and qualify for enhanced statutory damages. *See* 17 U.S.C. § 504(c)(2). As explained above, it is customary in these situations for courts to award a multiple of the license fee as statutory damages in order to advance the

policies of compensation and deterrence. Thus, Werner would propose the following statutory damages award:

For both the Wiley Coyote and Buffalo Whisperer Images, Werner would propose that he be awarded $10,000 each in statutory damages, representing approximately twice the lost license fee. Werner believes this amount to be just given the amount of the license fee, the duration of the use, and the fact that Defendant Evolve appears to have removed these two Images after receiving the first cease and desist letter.

For the Mr. Stubbs and Giant George Images, Werner would propose that he be awarded $90,000 each in statutory damages, which represents approximately three times the lost license fee. Werner believes this amount to be just for a number of reasons. First, the Mr. Stubbs Image contained a visible watermark indicating that it was protected by copyright. Second, despite multiple cease and desist letters, neither Image was removed prior to Werner filing suit, and the Giant George Image was still publically displayed as late as March of 2020, nearly two years *after* Werner originally filed suit. Third, Defendant Evolve has been sued at least 10 times for copyright infringement, suggesting that it is a repeat infringer, and also has adopted and implemented policies that expressly condone copyright infringement.

The statutory award suggested would concurrently serve both the polices of compensation and deterrence.

Although Werner has attempted to quantify his damages in terms of a lost license fee, infringement of this sort is considerably more detrimental than simply losing a license, and the award sought would not be a windfall by any means. Not only does rampant Internet infringement destroy the exclusivity and rarity of Werner's photographs, which is the lynch pin of his business model, but Werner has been forced to divert much of his time and money to detecting and pursuing infringement, which is an expensive and cumbersome task. *See* Werner Decl. ¶¶12-

**MOTION FOR STATUTORY DAMAGES**

15. Such damages cannot be fully reflected in a simple lost license fee. Nonetheless, the statutory award sought would, in some sense, make Werner whole.

In addition, the statutory award sought would serve as a deterrent to Defendant Evolve and also serve as a warning to future infringers. It is clear that Defendant Evolve has taken the calculated risk that it is more profitable to infringe and hope to avoid being caught rather than to pay market value license fees. Furthermore, Defendant Evolve adopted corporate policies encouraging copyright infringement, failed to remove the Image despite repeated notice, and is apparently a serial infringer of photographs. *See* Carreon Decl. ¶¶5-7, Exhibit A. The statutory award sought would serve to deter Defendant Evolve from continuing to engage in such egregious behavior and would also serve as a warning to other to not only respect the intellectual property rights of other, but also to act swiftly when placed on notice of a potential infringement.

Thus, the statutory award sought is reasonable and well within the statutory range available to Werner, and the Court should exercise its discretion to award the amount sought.

In conclusion, Werner requests that he be awarded $10,000 in statutory damages for infringement of the Wiley Coyote Image, $10,000 in statutory damages for infringement of the Buffalo Whisperer Image, $90,000 in statutory damages for infringement of the Mr. Stubbs Image, and $90,000 in statutory damages for infringement of the Giant George Image.

### III. CONCLUSION

In conclusion, Plaintiff Jeffery R. Werner respectfully requests that he be awarded $10,000 in statutory damages for infringement of the Wiley Coyote Image, $10,000 in statutory damages for infringement of the Buffalo Whisperer Image, $90,000 in statutory damages for infringement of the Mr. Stubbs Image, and $90,000 in statutory damages for infringement of the Giant George Image.

| | | |
|---|---|---|
| 1 | DATED: May 25, 2020 | Respectfully submitted, |
| 2 | | |
| 3 | | **/s/ Ryan E. Carreon** |
| | | Ryan E. Carreon, Esq. |
| 4 | | Cal. Bar No. 311668 |
| 5 | | **HIGBEE & ASSOCIATES** |
| | | 1504 Brookhollow Dr., Ste 112 |
| 6 | | Santa Ana, CA 92705-5418 |
| 7 | | (714) 617-8336 |
| | | (714) 597-6559 facsimile |
| 8 | | *Counsel for Plaintiff* |

I, the undersigned, say:

I am a citizen of the United States and I am a member of the Bar of this Court. I am over the age of 18 and not a party to the within action My business address is 1504 Brookhollow Dr., Ste 112, Santa Ana, California, 92705.

On May 25, 2020 I caused to be served the foregoing documents:

**NOTICE OF MOTION AND MOTION FOR STATUTORY DAMAGES; DECLARATION OF JEFFERY R. WERNER; DECLARATION OF RYAN E. CARREON; [PROPOSED] ORDER**

X    I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California using the CM/ECF system which will send notice of such filing to the following registered CM/ECF users:

**Ricardo Alan Chavez**    rchavez.law@gmail.com

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on May 25, 2020 at Santa Ana, California.

*/s/ Ryan E. Carreon*
Ryan E. Carreon